IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIRSTEN A. HAMMERSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | Cause No. 1:16-cv-3326 |
| | ) | |
| SHALOM HEALTH CARE CENTER, INC., LEONARDO ORTEGA, M.D., individually and in his official capacity, GREGG GROTE, individually and in his official capacity, and MEGAN CARLSON, individually and in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff Kirsten A. Hammersley, by counsel, for her Complaint for Damages and Demand for Trial by Jury, states as follows:

## I. INTRODUCTION

1. This is an action brought by Kirsten A. Hammersley against Defendants Shalom Health Care Center, Inc. ("Shalom"); Leonardo Ortega, M.D., individually and in his official capacity ("Dr. Ortega"); Gregg Grote, individually and in his official capacity ("Mr. Grote"); and Megan Carlson, individually and in her official capacity ("Ms. Carlson"), between which parties there was an employment relationship. Defendants violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(a), by failing to pay Ms. Hammersley the full salary she was owed under her employment contract. Ms. Hammersley also brings claims for unpaid wages, statutory penalties, interest, and attorneys' fees and costs, under the Indiana Wage Payment Statute, Ind. Code § 22-2-5, *et seq.*

## II. JURISDICTION

2. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, and 1337. This action is authorized and instituted pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy between Plaintiff and Defendants.

3. The alleged unlawful practices were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## III. VENUE

4. Ms. Hammersley is a resident of Hamilton County in the State of Indiana, and is a citizen of the United States of America.

5. Defendant Shalom Health Care Center, Inc.'s headquarters are located in Marion County, Indiana.

6. Defendant Leonardo Ortega, M.D. is and was at all times relevant to this Complaint, the Executive Director and CEO of Defendant Shalom Healthcare, Inc.

7. Defendant Gregg Grote is and was at all times relevant to this Complaint, the Chief Financial Officer of Defendant Shalom Healthcare, Inc.

8. Defendant Megan Carlson is and was at all times relevant to this Complaint the Chief Nursing Officer of Defendant Shalom Healthcare, Inc.

9. The unlawful practices alleged below arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana; thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where a defendant resides or in which the cause of action arose.

## IV. PLAINTIFF

10. Ms. Hammersley is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Hamilton County in the State of Indiana.

11. Ms. Hammersley resides in Fishers, Indiana.

12. During all times relevant to this Complaint, Ms. Hammersley worked as a Pediatric Nurse Practitioner at a Shalom Health Care Center, Inc. school based clinic.

## V. DEFENDANTS

13. Shalom Health Care Center, Inc. is located at 3400 Lafayette Road, Suite 200, Indianapolis, Indiana 46222.

14. Dr. Ortega resides in Carmel, Indiana.

15. Mr. Grote resides in Indianapolis, Indiana.

16. Ms. Carlson resides in Indianapolis, Indiana.

17. At all times relevant to this action, Shalom Health Care Center, Inc. employed Ms. Hammersley.

## VI. STATEMENT OF FACTS

18. Ms. Hammersley began working for Shalom Health Care Center, Inc. ("Shalom") as a Pediatric Nurse Practitioner in various school-based clinics on or around August 18, 2014.

19. Ms. Hammersley signed an offer letter from Shalom on August 12, 2014, that set out her promised compensation and other benefits. A copy of Ms. Hammersley's offer letter from Shalom is attached as Exhibit A.

20. On or about September 15, 2014, Ms. Hammersley and Shalom entered into an Employment Practice Agreement that included the "Terms of Employment" for Ms. Hammersley. A copy of the Employment Practice Agreement is attached as Exhibit B.

21. Until Ms. Hammersley resigned her employment effective September 9, 2016, she was scheduled to work eight hours a day for a total of 202 calendar days between July and June.

22. Shalom classified Ms. Hammersley as a full time "exempt (salaried)" employee. Accordingly, Ms. Hammersley should have been paid on a full time salaried basis—earning the same amount during each work week whether she worked more than forty hours or less than forty hours during the work week.

23. Under the terms of Ms. Hammersley's offer letter and the Employment Practice Agreement, Ms. Hammersley's annual gross salary was $85,000.00, to be paid in bi-weekly installments for the first ninety (90) days of her employment, which was a probationary period.

24. After the ninety-day probationary period, Ms. Hammersley's annual gross salary was promised to increase to $90,000.00, to be paid in bi-weekly installments.

25. However, throughout her employment with Shalom, Ms. Hammersley was treated as a non-exempt hourly employee, not a full-time exempt salaried employee, even though Shalom classified her job as full time, "exempt (salaried)" and her job responsibilities required her to be paid as a salaried employee exempt from overtime pay.

26. Nonetheless, if Ms. Hammersley worked less than 40 hours during a work week, she was only paid for the hours worked. Conversely, if Ms. Hammersley worked 40 or more hours during a work week, she was only paid for 40 hours of work.

27. In addition, Ms. Hammersley was forced to use vacation or personal days to receive pay on the days that the schools where she worked were out of session, delayed, and/or cancelled.

28. Under the terms of the offer letter and Employment Practice Agreement, Ms. Hammersley was entitled to receive benefits and privileges of a full-time exempt employee.

Among other benefits, Ms. Hammersley accumulated 17 days of vacation, eight PTO (personal/sick) days and seven holidays during a year of employment.

29. Ms. Hammersley's salary was to be paid in bi-weekly payments over 52 weeks.

30. However, if the school where Ms. Hammersley worked was out of session, delayed, and/or cancelled, Shalom required Ms. Hammersley to use vacation or PTO she had accrued. She also was not paid for holidays as promised.

31. Ms. Hammersley performed the same job functions during her entire tenure with Shalom.

32. Ms. Hammersley received an excellent review and met all requirements of her position while at Shalom.

33. Shalom thus indicated to Ms. Hammersley in writing on May 19, 2015 that she would receive the maximum three percent raise from her base salary of $90,000, which was to be implemented at the beginning of the following school year in August 2015.

34. However, Shalom denied Ms. Hammersley this raise and instead informed Ms. Hammersley on July 20, 2015, that it was reducing Ms. Hammersley's pay effective August 21, 2015, denying Ms. Hammersley annual pay of approximately $5,150.

35. Shalom also began paying Ms. Hammersley bi-weekly payments over 46 weeks, instead of 52 weeks, without adjusting the bi-weekly amount to equal her annual salary.

36. Shalom continued treating Ms. Hammersley as an hourly employee, denying Ms. Hammersley her full salary she was owed, through approximately July 2016.

37. In approximately July 2016, Shalom changed its policies and explicitly began treating Ms. Hammersley as an hourly employee, paying her a fixed amount of $443.42 per eight hours worked instead of paying her a bi-weekly salary over 23 weeks.

38. Throughout her employment, Shalom continued forcing Ms. Hammersley to use vacation and personal time to receive pay during the periods the school where Ms. Hammersley worked was out of session, delayed, and/or cancelled regardless of whether Ms. Hammersley was ready, willing, and able to work.

39. Ms. Hammersley raised the issue of Shalom's failure to correctly pay her with her direct supervisor, Megan Carlson, as well as Gregg Grote, Shalom's Chief Financial Officer. Ms. Hammersley's pay was never corrected.

## VII. STATEMENT OF CLAIMS

### COUNT I

*(Denial of Compensation under FLSA 29 U.S.C. §§ 207, 211(c), 216(b) and Indiana Wage Payment Statute, Ind. Code. §§ 22-2-5-1, 22-2-5-2.)*

40. Ms. Hammersley incorporates the allegations of paragraphs 1 through 39 above and, in addition, states that Shalom's, Dr. Ortega's, Mr. Grote's and Ms. Carlson's acts and omissions in this matter violated the Fair Labor Standards Act as well as the Indiana Wage Payment Statute.

41. Ms. Hammersley was hired as an "exempt (salaried)" employee to serve as a nurse practitioner for Shalom.

42. Ms. Hammersley, as a professional employee and a licensed nurse practitioner, was ineligible for overtime compensation.

43. Under her Employment Practice Agreement, Ms. Hammersley was to be paid on an exempt (salaried) basis and was to regularly receive the same bi-weekly amount regardless of the number of hours worked, as long as Ms. Hammersley worked the requisite total number of days under the Agreement.

44. However, Shalom paid Ms. Hammersley as a non-exempt hourly employee, not an exempt salaried employee when she worked under forty hours in a work week. Specifically,

Shalom paid Ms. Hammersley only for the hours she worked if she worked under forty (40) hours during that work week.

45. Conversely, when Ms. Hammersley worked more than forty (40) hours during a work week, Shalom paid Ms. Hammersley as an exempt salaried employee. Thus, Shalom did not pay Ms. Hammersley overtime if she worked more than forty (40) hours during a work week.

46. In addition, Shalom failed to pay Ms. Hammersley the raise it provided to Ms. Hammersley in May 2015.

47. Dr. Ortega, Mr. Grote and Ms. Carlson implemented Shalom's unlawful pay practices and willfully, knowingly and in bad faith engaged in violating the FLSA and the Indiana Wage Payment Statute.

48. Shalom was aware of Ms. Hammersley's status as an exempt salaried full-time employee as it designated her as such, so its failure to pay her according to her status was willful, knowing and/or in reckless disregard of the provisions of the FLSA and the Indiana Wage Payment Statute.

49. Because of Shalom's policy and practice of failing to pay Ms. Hammersley in accordance with her full time exempt salaried position, Ms. Hammersley has been damaged in that she has not received the full wages due to her in a timely manner as required by the FLSA and the Indiana Wage Payment Statute.

50. As a consequence of the unlawful acts of Shalom, Dr. Ortega, Mr. Grote and Ms. Carlson, Ms. Hammersley has been deprived of compensation in an amount to be determined at trial, and is entitled to recovery of such amount, liquidated damages (or, alternatively, interest), attorneys' fees and costs, and other compensation, pursuant to 29 U.S.C. § 216(b) and Ind. Code § 22-2-5-2. Ms. Hammersley requests relief as described below in the prayer for relief.

**COUNT II**
*(Breach of Contract)*

51. Ms. Hammersley incorporates the allegations of paragraphs 1 through 50 above, and, in addition, states that the actions of Shalom constituted a breach of contract.

52. Shalom and Ms. Hammersley entered into an Employment Practice Agreement and other written documents that constituted the employment contract between them.

53. During her employment, Shalom refused to pay Ms. Hammersley her due and owing wages under the employment contract. This constitutes a breach of the employment contract.

54. Ms. Hammersley fulfilled the requirements of the employment contract.

55. Ms. Hammersley has suffered damages because she has not been paid the amounts owed to her under the employment contract with Shalom.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kirsten A. Hammersley prays for a judgment in her favor against Defendants and prays that the following relief be awarded:

(a) A declaratory judgment that Defendants have violated the exempt provisions of the FLSA and the Indiana Wage Payment Statute as to Plaintiff;

(b) A declaratory judgment that Defendants' violations of the FLSA were willful;

(c) An award to Plaintiff in the amount of unpaid compensation to be proven at trial;

(d) An award to Plaintiff of liquidated damages in an amount equal to the compensation shown to be owed to her pursuant to 29 U.S.C. § 216(b) and Ind. Code § 22-2-5-2;

(e) An award to Plaintiff for the appropriate wages which have been earned including all lost vacation and personal time, owing and due with pre-judgment and post-

judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

(f) An award to Plaintiff for double the amount of wages due for Defendants' violation of Indiana Code § 22-2-5-2 as described above;

(g) An award to Plaintiff for the cost of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable pursuant to Indiana Code § 22-2-5-2;

(h) An award to make Ms. Hammersley whole by providing appropriate wages, which are owed and due with pre-judgment and post-judgment interest, in amounts to be determined at trial, which amounts include Ms. Hammersley's salary through and including September 9, 2016, any applicable bonuses, life insurance benefits, retirement benefits, health and dental insurance benefits, and any other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

(i) Such further relief as the Court deems necessary and proper in the public interest.

## IX. RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## X. JURY TRIAL

Plaintiff demands trial by jury on all issues so triable. Because Defendants first breached the Employment Practice Agreement and related written documents, they cannot enforce the provisions under the Agreement requiring Ms. Hammersley not to request or demand trial by jury and to waive her right to a jury trial.

Respectfully submitted,

*s/ Sandra L. Blevins*

Kevin W. Betz, Atty. No. 14188-82
Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Endwright, Atty. No. 30557-49

*Attorneys for Plaintiff Kirsten A. Hammersley*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com